UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19-cv-00040-MR

| BRIAN G. RANSOM, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OF DECISION AND ORDER** |
| THOMAS HAMILTON, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 39].

I. **PROCEDURAL BACKGROUND**

Pro se Plaintiff Brian G. Ransom[1] ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. Plaintiff filed this action on February 4, 2019 with a verified Complaint, pursuant to 42 U.S.C. § 1983, in which he claims that Defendant Thomas Hamilton, identified as the Unit Manager of E-Unit at Marion Correctional Institution ("Marion"), violated Plaintiff's rights under the

---

[1] Plaintiff consistently lists his last name as "Ransom." [See Doc. 1 at 1]. Plaintiff's prison records, however, show that his last name is "Ranson."

First Amendment by retaliating against Plaintiff for filing grievances.[2] [Doc. 1]. Plaintiff sues Defendant Hamilton in his individual and official capacities. [Id. at 2].

On May 12, 2021, Defendant Hamilton moved for summary judgment, [Doc. 39]. In support of his motion, Defendant Hamilton submitted a memorandum; his own Affidavit; an Affidavit of David Cothron; and an Affidavit of Counsel, which attached Plaintiff's relevant disciplinary records and Offender Information Report. [Docs. 40, 40-1 through 40-3].

The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the way evidence could be submitted to the Court. [Doc. 41]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

---

[2] Plaintiff also asserted claims under the Eighth and Fourteenth Amendments against Defendant Hamilton and Defendants Nicholas Davis and Morgan Kizer, but, on motion by Defendants, these claims and Defendants Davis and Kizer were dismissed for Plaintiff's failure to exhaust administrative remedies. [Docs. 22, 26].

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. at 3 (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that, "[i]f Plaintiff has any evidence to offer to show that there is a genuine issue for trial," "he must now present it to this Court in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations." [Id. at 2 (citing Fed. R. Civ. P. 56(c)(4))]. Plaintiff did not respond to Defendant's summary judgment motion. Plaintiff's Complaint, however, was submitted under penalty of perjury and the allegations therein made on Plaintiff's personal knowledge, therefore, are to be considered for their evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding that verified prisoner complaints should be considered as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3

(1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at

248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Harris, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

In the verified Complaint, Plaintiff alleged, in relevant part, as follows. On January 8, 2019, the same day he filed a grievance against former Defendant Davis for sexual harassment, Plaintiff was charged with two infractions for having his outside window covered. [Doc. 1 at 4]. On January 11, 2019, Defendant Hamilton charged Plaintiff with an A-18 infraction for "false allegations on an official for filing a sexual complaint." [Id. at 6]. The charge was referred to a Disciplinary Hearing Officer (DHO). [Id.].

On January 19, 2019, Plaintiff received a rejection notice concerning eleven photographs that Plaintiff's mother had sent him. The photographs were rejected because four of them "[supposedly] … had some type of smear on them," which "the prison" described as an 'unknown substance.'" [Doc. 1 at 5]. On the same day, Defendant Hamilton would not allow Plaintiff to view the photographs "to see the problem stated." [Id.].

Defendant's relevant forecast of evidence shows the following. At the relevant times, Defendant Hamilton was employed by the North Carolina Department of Public Safety (NCDPS) as an Assistant Unit Manager at Marion. [Doc. 40-2 at ¶ 2]. Plaintiff's most recent term of incarceration began in 2014 after having been convicted of robbery with a dangerous weapon and other property crimes. [Doc. 40-1 at 3-4]. Since that time, Plaintiff has

6

Case 1:19-cv-00040-MR Document 42 Filed 11/08/21 Page 6 of 15

been charged with 81 infractions. [Id. at 3]. Between December 2018 through January 2019, Plaintiff submitted multiple PREA3 grievances against various correctional staff. [Doc. 40-2 at ¶ 5: Hamilton Aff.]. All Plaintiff's grievances were investigated. [Id.].

On December 19, 2018, Plaintiff submitted a PREA grievance, No. 3730-18-598, against staff member Matthew Nanney alleging sexual harassment. [Id. at ¶ 6]. An investigation of these allegations was conducted. On January 18, 2019, Defendant Hamilton, in his capacity as Unit Manager, was notified that Plaintiff's PREA grievance against Nanney was determined to be unfounded by regional authorities. Hamilton, therefore, initiated an A-18 disciplinary charge against Plaintiff for a False Report on Staff and the matter was referred to a DHO. [Id.; Doc. 40-1 at 11]. Plaintiff refused to attend the disciplinary hearing, where Plaintiff was found guilty of the charge. [Doc. 40-1 at 13].

On December 20, 2018, Plaintiff submitted another PREA grievance, No. 3730-18-581, against staff member Ryan Robinson alleging sexual harassment. [Doc. 40-2 at ¶ 7]. On January 11, 2019, Defendant Hamilton,

---

3 PREA stands for the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

in his capacity as Unit Manager, was notified that this PREA grievance was determined by regional authorities to be unfounded. Hamilton, therefore, initiated an A-18 disciplinary charge against Plaintiff. [Id.; see Doc. 40-1 at 26-27]. Plaintiff waived a disciplinary hearing and pleaded guilty to this charge. [Doc. 40-1 at 28-29].

Defendant Hamilton initiated the two A-18 charges against Plaintiff in accordance with the NCDPS Policy and Procedure Manual, which prohibits false statements against staff members. [Id. at 40-2 at ¶ 8]. Hamilton did not initiate these charges against Plaintiff in retaliation for Plaintiff submitting grievances, but rather to further the legitimate penological interest in preventing false statements against staff and ensuring order in the facility. [Id. at ¶¶ 8-9]. Moreover, once disciplinary charges are finalized, Defendant Hamilton does not have the authority or ability to overturn, reverse, or expunge an inmate's disciplinary infractions. [Id. at ¶ 10].

On January 8, 2019, at approximately 9:00 a.m., Officer J. Mooney directly ordered Plaintiff to remove a covering on Plaintiff's cell light and window. [Doc. 40-1 at 35]. Plaintiff refused to comply with Officer Mooney's order. At approximately 4:15 p.m., on the same day, Mooney was making another round and Plaintiff again had his light and window covered. Mooney again ordered Plaintiff to remove the cover and Plaintiff refused. [Id.].

8

Case 1:19-cv-00040-MR   Document 42   Filed 11/08/21   Page 8 of 15

Plaintiff received two infractions, one for having his light and window covered and one for refusing orders to remove the covering. [Id.]. The infractions were referred for a disciplinary hearing. [Id.]. Defendant Hamilton and Robert Baker, a DHO, approved the charges. [Id. at 36]. Thereafter, Plaintiff waived a disciplinary hearing and pleaded guilty to the charge. [Id. at 37].

During the relevant times, Marion had separate mailroom staff. The mailroom staff, and not Defendant Hamilton, was responsible for reviewing and potentially rejecting incoming inmate mail. [Doc. 40-2 at ¶ 3]. If an inmate's mail was rejected, the rejection notice was given to Defendant Hamilton, as Assistant Unit Manager, to deliver to the inmate. An inmate whose mail is rejected can appeal the rejection or ask that the mail be returned or destroyed. [Id.]. Defendant Hamilton never rejected any of Plaintiff's incoming mail and never instructed anyone else to reject it. [Id. at ¶ 4].

This matter is now ripe for disposition.

## IV. DISCUSSION

Defendant argues that he is entitled to summary judgment because he did not violate Plaintiff's rights under the First Amendment, because <u>Heck v. Humphrey</u> bars Plaintiff's claims based on disciplinary infractions, and because he is entitled to qualified immunity. [Doc. 40]. Notably, Defendant

9

Case 1:19-cv-00040-MR   Document 42   Filed 11/08/21   Page 9 of 15

does not argue that the Eleventh Amendment bars the official capacity claim Plaintiff sought to bring. [See Doc. 40]. The Court will, nonetheless, address this issue. McRay v. Maryland Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) ("[B]ecause of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.") (citation omitted).

### A. Sovereign Immunity

Plaintiff here purports to sue Defendant Hamilton in his individual and official capacities. A suit against a state official in his official capacity, however, is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived

its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendant Hamilton is entitled to summary judgment on the Plaintiff's claim against him in his official capacity and the Court will grant Defendant's Motion for Summary Judgment as to that claim.[4]

**B.     First Amendment**

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017). "The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct." Wade v.

---

[4] For relief, Plaintiff wants, in part, an injunction ordering Defendant Hamilton "to expunge all disciplinary infractions do to the time Plaintiff filed his first Prea on officer Davis, with restoration of all rights and priviledged." [Doc. 1 at 14 (errors uncorrected)]. Since filing his Complaint, however, Plaintiff has been transferred from Marion. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007). As such, the Ex Parte Young exception to sovereign immunity, which allows official capacity claims in § 1983 actions to proceed where a plaintiff seeks prospective injunctive relief, does not apply. See Ex Parte Young, 28 S. Ct. 441 (1908). Moreover, the forecast of evidence shows that Defendant Hamilton, the sole remaining Defendant, lacks authority or ability to order such relief in any event.

Ballard, No. 2:13-cv-12817, 2016 WL 3693597, at *4 (S.D.W. Va. June 16, 2016) (citing Mt. Healthy City School Dist. Bd. of Educ. V. Doyle, 429 U.S. 274 (1977)). Inmate claims of retaliation, however, are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Plaintiff claims that Defendant Hamilton retaliated against him for filing PREA grievances by charging Plaintiff with two A-18 offenses. Plaintiff also claims that he was charged with infractions for covering his cell window and light and for disobeying orders to uncover them and that Defendant Hamilton refused to allow Plaintiff to see rejected photographs. There is, however, no relevant forecast of evidence that Plaintiff was retaliated against for filing grievances. Plaintiff's bare assertion that the prosecution of his offenses was retaliation, without more, is insufficient. Rather, the forecast of evidence shows that Defendant Hamilton charged Plaintiff with two A-18 infractions for making false reports of sexual harassment against two different prison staff members which were determined to be unfounded. The forecast of evidence also shows that Plaintiff pleaded guilty to one of these infractions and was found guilty of the other. As such, no reasonable jury could find that these

infractions were the result of retaliatory motive by Defendant Hamilton rather than due to Plaintiff's own, proven conduct.

The same is true of Plaintiff's claim relative to the window covering infractions. The forecast of evidence shows that another prison staff member, Officer Mooney (who is not a defendant), reported the incidents for which Plaintiff was charged and that Defendant Hamilton approved the charges. There is no relevant forecast of evidence from which a jury could find a retaliatory motive for these charges. Plaintiff merely violated prison rules and then refused to obey orders to fix these violations and then pleaded guilty to the charges. Accordingly, based on the relevant forecast of evidence, no reasonable jury could find that the window covering infractions were the result of anything but Plaintiff's own conduct.

Finally, as to the rejected photographs, the relevant forecast of evidence shows that Defendant Hamilton was not involved in the decision to reject the photographs, only that he refused to allow Plaintiff to see them so that Plaintiff could "see the problem stated." There is no forecast of evidence that Plaintiff had any right to view the rejected items or that Defendant Hamilton's refusal to allow Plaintiff to see them was anything more than adherence to prison policy. From this forecast of evidence, no reasonable

jury could find that Defendant Hamilton's handling of Plaintiff's request to see rejected photographs was motivated by Plaintiff's filing of grievances.

There is, therefore, no genuine issue for trial on Plaintiffs First Amendment claim against Defendant Hamilton and the Court will grant his Motion for Summary Judgment on this ground.[5]

### C. Qualified Immunity

"Qualified immunity is an affirmative defense that shields public officers performing discretionary duties from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lovelace, 472 F.3d at 196 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The

---

[5] The Court notes, as argued by Defendant, that Heck v. Humphrey, 512 U.S. 477 (1994), as applied by Edwards v. Balisok, 520 U.S. 641 (1997), appears to bar Plaintiff's claim to the extent it is based on retaliatory infractions resulting in an adjudication of guilt. In Edwards, the Supreme Court applied Heck to hold that a § 1983 prisoner's Fourteenth Amendment due process claim based on procedures used in a disciplinary proceeding was barred where success on such claim would imply the invalidity of the punishment imposed. 117 S. Ct. at 646-48.
14

doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendant violated a constitutional or statutory right, Defendant is also entitled qualified immunity on Plaintiff's individual capacity claim. The Court, therefore, grants summary judgment for Defendant Hamilton on this ground as well.

## V. CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is granted.

### ORDER

**IT IS, THEREFORE, ORDERED** Defendant's Motion for Summary Judgment [Doc. 39] is **GRANTED**; and this action is dismissed with prejudice.

The Clerk is respectfully instructed to terminate this action.
**IT IS SO ORDERED**.

Signed: November 8, 2021

Martin Reidinger
Chief United States District Judge